IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

JUNE CASEY,                            )
                                       )
                    Plaintiff,         )
                                       )
v.                                     )        No. 2:08-CV-095
                                       )
MICHAEL J. ASTRUE,                     )
Commissioner of Social Security,       )
                                       )
                    Defendant.         )

## MEMORANDUM OPINION

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claim for disability insurance and Supplemental Security Income ("SSI") benefits. For the reasons provided herein, defendant's motion for summary judgment [doc. 12] will be granted, and plaintiff's motion for summary judgment [doc. 10] will be denied.

I.

*Procedural History*

Plaintiff was born in 1956. She applied for benefits in November 2005, claiming to be disabled by back problems and by arthritis in both hands. [Tr. 47, 58, 171]. In response to the Commissioner's initial inquiry, "How do your illnesses, injuries, or conditions limit your ability to work?," plaintiff stated in full, "I can't sit for long periods of time - can't stand for long; pain radiates down into the right hip; sometimes my left leg gets

numb; my hands hurt in the cold weather." [Tr. 58-59].

Plaintiff alleges a disability onset date of September 28, 2003. [Tr. 47, 171]. The present applications were denied initially and on reconsideration. Plaintiff then requested a hearing, which took place before an Administrative Law Judge ("ALJ") on March 26, 2007.

On May 11, 2007, the ALJ issued a decision denying benefits. He concluded that plaintiff suffers from "chronic lumbosacral strain (with reduced range of motion), neck strain and myofascial type pain syndrome," which are "severe" impairments but not equal, individually or in concert, to any impairment listed by the Commissioner. [Tr. 18, 20]. Relying on medical expert testimony, the ALJ found that plaintiff remains able to lift and carry "35 pounds occasionally and 15 pounds frequently with no repetitive bending/stooping, no climbing ladders and no work around heights or hazardous equipment." [Tr. 20]. Citing vocational expert testimony, the ALJ determined that plaintiff remains able to return to her past relevant work "as an office cleaner and an assembler/packer." [Tr. 21]. Plaintiff was accordingly deemed ineligible for benefits.

Plaintiff then sought, and was denied, review from the Commissioner's Appeals Council, despite the submission and consideration of additional medical records. [Tr. 5, 8].[1] The ALJ's ruling became the Commissioner's final decision. *See* 20 C.F.R. §§

---

[1] Plaintiff's additional documents [Tr. 182-90] are not discussed in her brief and are thus not an issue on appeal. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006).

404.981, 416.1481.  Through her timely complaint, plaintiff has properly brought her case before this court for review.  *See* 42 U.S.C. § 405(g).

II.

*Applicable Legal Standards*

Review of the Commissioner's decision is confined to whether the ALJ applied the correct legal standards and whether his factual findings were supported by substantial evidence.  42 U.S.C. § 405(g)*; Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The "substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488 (1951)).  In reviewing administrative decisions, the court must take care not to "abdicate [its] conventional judicial function," despite the narrow scope of review.  *Universal Camera*, 340 U.S. at 490.

A claimant is entitled to disability insurance payments if she (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed an application for disability insurance benefits, and (4) is under a disability.  42 U.S.C. § 423(a)(1). "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

3

death or which has lasted or can be expected to last for a continuous period of not less than

12 months[.]" 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423 (d)(2)(A).[2]   Disability is evaluated pursuant to a five-step analysis

summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.

> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters*, 127 F.3d at 529 (citing 20 C.F.R. § 404.1520).  Plaintiffs bear the burden of proof

---

[2] A claimant is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability.  42 U.S.C. § 1382.  "Disability," for SSI purposes, is defined the same as under § 423.  42 U.S.C. § 1382c(a)(3).

4

during the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *See id.*

### III.

*Relevant Evidence*[3]

#### A. Mental

On July 28, 2004, plaintiff complained to Dr. Michael Odell of being "very stressed" and "perhaps slightly depressed." [Tr. 96]. On September 8, 2004, plaintiff was "still feeling very anxious" and depressed. [Tr. 94]. On October 14, 2004, plaintiff told Dr. Odell that she felt "remarkably better" thanks to the anti-anxiety medication Alprazolam (xanax) and the antidepressant Lexapro. [Tr. 93]. Plaintiff was a "no show" at her December 2004 appointment. [Tr. 93]. On May 3, 2005, plaintiff again reported "difficulty with feeling depressed," but Dr. Odell noted that she was not taking her medication as prescribed. [Tr. 91-92]. Dr. Odell's September 2, 2005 notes contain a carry-over diagnosis of depression but plaintiff still was not taking her medications as prescribed, purportedly due to financial concerns and an upcoming court appearance. [Tr. 90].

Dr. Karl Konrad performed a consultative examination on January 26, 2006. Plaintiff's mental status was observed to be, "Alert and oriented. Speech intelligible and

---

[3] On appeal, plaintiff raises no challenges pertaining to her physical condition. Instead, she attacks only the ALJ's conclusions relating to her mental health and her past relevant work. Any issues relating to her physical complaints have accordingly been waived, *see Hollon v. Commissioner of Social Security*, 447 F.3d 477, 491 (6th Cir. 2006), and the court's remaining discussion will focus exclusively on plaintiff's mental health and past employment.

sustained. No aphasia. Thoughts and ideas normal. Behavior is appropriate for the situation. Memory for events surrounding present exam and for personal history normal. Clinically appears to be of average intelligence. Affect normal. Grooming normal, relative to socio-economic situation. Can handle own funds." [Tr. 99-100].

On May 18, 2006, Dr. Odell noted that plaintiff "is not depressed any more using the medication however she still feels stressed . . . ." [Tr. 147]. At a June 7, 2006 appointment with Dr. William Bridges, plaintiff was described as alert, oriented, and in no acute distress. [Tr. 145]. Dr. Odell's records of August 21 and September 20, 2006, mention the carry-over diagnosis of depression but contain no mental health complaints. [Tr. 141, 169]. On October 18, 2006, Dr. Odell wrote, "Anxiety and depression seem controlled." [Tr. 168].

Dr. Susan Bland testified at the administrative hearing. Dr. Bland reviewed the administrative record and listened to plaintiff's testimony. [Tr. 211-14]. Dr. Bland predicted no psychologically-based vocational limitations. [Tr. 214].

B. Vocational

In her initial Disability Report, plaintiff reported past employment only as an assembler (from 1986 through 1990) and as a shipping and receiving worker. [Tr. 59]. In her subsequent Work History Report, plaintiff reported additional past work as a hospital housekeeper, a parts cleaner, and a second assembler job (from May 2002 through August

6

2003).  [Tr. 64].[4]  Plaintiff told the Commissioner that each assembler position involved a forty-hour workweek.  [Tr. 59, 66].  She subsequently told the Commissioner that her second assembler job began in May 2003, rather than May 2002.  [Tr. 86].[5]

Dr. Norman Hankins appeared as a vocational expert at the administrative hearing.  The ALJ presented a hypothetical claimant with limitations including plaintiff's education level and the physical restrictions predicted by Dr. Bland.  In response, Dr. Hankins testified that the hypothetical claimant could return to "practically all of" plaintiff's past work with the exception of any prior cleaning jobs.  [Tr. 216-17].  In the alternative, Dr. Hankins identified other jobs existing in the state and national economies that the hypothetical claimant could perform, including "office cleaner."  [Tr. 218].

---

[4]  As will be discussed below, the duration of plaintiff's second assembler job is a central issue on appeal.

[5]  The administrative record contains additional conflicting information regarding the second assembler job.  On an undated "Claimant's Work Background" form, plaintiff told the Commissioner that she left the assembler job in 2003 rather than 2002 because she was recalled by her shipping/receiving employer, from whom she had been laid off.  [Tr. 86].  However, in December 2002 plaintiff told Dr. Odell that she left the assembler job in 2002 due to a lay off.  [Tr. 97].  Further muddling the picture, plaintiff testified that her shipping and receiving job was "like an assembly line" [Tr. 197], and she appears to have told the Commissioner that she worked at that job for either twelve years [Tr. 59], seven or nineteen months [Tr. 64], three months [Tr. 197], or less than twenty-five days [Tr. 86].

7

IV.

*Analysis*

A. <u>Mental</u>

At step two of his sequential analysis, the ALJ concluded that plaintiff suffers from the severe impairments of "chronic lumbosacral strain (with reduced range of motion), neck strain and myofascial type pain syndrome." [Tr. 18]. Plaintiff now argues that the ALJ erred in not also concluding that she suffers severe mental impairments.

Plaintiff's argument is unpersuasive. This is not a case in which a claimant has alleged only one impairment. In such cases, an adverse determination at step two causes the entire application to be "screened out" as "totally groundless." *See Higgs v. Bowen*, 880 F.2d 860, 862-63 (6th Cir. 1988). By contrast, in the present case plaintiff alleges - and the ALJ recognized - multiple severe impairments. Accordingly, despite the finding of no severe mental impairment, plaintiff's claim survived step two. *See, e.g., Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

The ALJ also did not err at step four in concluding that plaintiff's alleged stress, depression, and illiteracy prevent her from returning to her past relevant work. Although plaintiff reports minimal literacy and a sixth grade education [Tr. 194-97], she testified that she has never been fired from any prior job because of those issues. [Tr. 196]. The administrative record as summarized above evidences, as best, episodic anxiety and depression. It is noteworthy that the mental status portion of Dr. Konrad's examination was

8

completely unremarkable [Tr. 99-100] and treating physician Odell wrote that "[a]nxiety and depression seem controlled." [Tr. 168].

Plaintiff testified that she still experiences some anxiety and depression on at least a monthly basis [Tr. 208], but that she does not suffer panic, hopelessness, or difficulty focusing [Tr. 209]. Further, the record contains no mental health treatment records. Certainly "[i]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation," *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989), but it is nonetheless noteworthy that by plaintiff's own admission no doctor has ever even encouraged her to seek mental health treatment. [Tr. 210].

Plaintiff attempts to argue that "[u]nfortunately" she is "somewhat limited" financially [doc. 11, p.6] and thus cannot afford sufficient medical care or counseling [Tr. 63, 72, 202], yet she smokes between one quarter and three packs of cigarettes per day [Tr. 91, 97-98, 113, 141, 145, 147] and, according to Dr. Odell, "drinks more caffeine than she should." [Tr. 141, 147]. Plaintiff's claim of financial difficulties is thus not credible, and her style of life is inconsistent with that of a person who truly suffers from the degree of limitation alleged. *See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988).

The court lastly rejects plaintiff's argument that the ALJ erred in not obtaining a mental status examination. At the conclusion of the administrative hearing, plaintiff's lawyer asked the ALJ to order a consultative psychological exam "based in light of the

9

testimony that has been offered today . . . ." [Tr. 218]. The court's review of the hearing transcript and the administrative record reveals only minor and episodic emotional complaints. Plaintiff told the Commissioner that she was seeking benefits solely for physical reasons. [Tr. 58-59]. The Commissioner obtained a physical consultative examination at which plaintiff presented no signs of emotional or cognitive difficulty, and her own treating physician deemed her depression and anxiety "controlled." It is within the Commissioner's discretion whether to purchase a consultative examination, *see* 20 C.F.R. §§ 404.1519a, 416.919a, and he did not err in declining to exercise that discretion based on the facts and testimony of the instant case.

## B. Vocational

As noted above, the ALJ concluded at step four that plaintiff remained able to return to her past relevant work "as an office cleaner and an assembler/packer." [Tr. 21]. Plaintiff is correct that the ALJ erred in stating that she could "return" to work as an office cleaner. Plaintiff never worked as an *office* cleaner. She worked as a *hospital* cleaner and, perhaps, as a *home* cleaner [Tr. 216], and vocational expert Dr. Hankins testified that she could *not* return to that work. [Tr. 217]. The office cleaner position was later mentioned by Dr. Hankins as an example of other work that plaintiff could perform. [Tr. 218]. Obviously, a claimant cannot "return" to work that she has never performed.

The error was however harmless, as substantial evidence support's the ALJ's alternate conclusion that plaintiff could also return to her prior assembly work. Plaintiff

argues that she "only performed assembly work for three months" [doc. 11, p.10], although the administrative record as cited above is wildly inconsistent on that point. Assuming that plaintiff did in fact only work as an assembler for three months, that is still sufficient time for the job to constitute "past relevant work." Plaintiff has not met her step four burden of proving otherwise.

"Past relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). "Substantial gainful activity" is work done for pay or profit involving significant mental or physical activity. *See* 20 C.F.R. §§ 404.1572, 416.972. Plaintiff's assembly work was done well within fifteen years prior to her disability claim, and she offers no argument that the job did not fit the broad definition of substantial gainful activity. Plaintiff similarly does not offer any argumentation to meet her step four burden of proving that the assembler job did not last long enough for her to learn how to do it. Dr. Hankins identified the work as unskilled [Tr. 216], and under the Commissioner's regulations an unskilled job can generally be learned within *one* month. *See* 20 C.F.R. 404.1568(a), 416.968(a).

# V.

## *Conclusion*

The ALJ committed no reversible error. The Commissioner's final decision will be affirmed, and an order consistent with this opinion will be entered.


ENTER:


_____s/ Leon Jordan_____
United States District Judge